By the Couht.
Slosson, J.
The verdict in this case was taken subject to the opinion of the court.
The suit is upon four checks of the defendant, amounting to $800, which had been exchanged with William Lansing, of the firm of S. G. & W. Lansing for the checks of that firm of same amount.
The defendants offered to show, that .at the time of the exchange it was verbally agreed between William Lansing and the defendants, that the defendants’ checks (in suit) were not to be paid, or required to be paid, unless the checks of S. G. & W. Lansing were paid, and that these latter. checks were not paid, and that the plaintiffs received the defendants’ checks with fall knowledge of this agreement.
The defendants also offered to show that checks had been exchanged in this way between defendants and S. G. & W. Lansing for about a month previous to the giving of the notes in suit upon the same agreement of which the plaintiffs had full knowledge. That such previous checks of defendants had been taken *333 during tbat period by S. G-. & W. Lansing to the plaintiffs, wbo gaye tbeir own checks in exchange therefor, upon a like agreement between them and S. Gr. & W. Lansing. That at first the exchange between the plaintiffs and S. Gr. & W. Lansing, was of the checks of that firm, but that the plaintiffs shortly before the checks in suit were given, had requested S. Gr. & W. Lansing to procure defendants’ checks, which was done, and the checks so procured were exchanged (in lieu of those of S. Gr. & W. Lansing) with the plaintiffs, and that the checks in suit were procured in accordance with that request.
The substance of the offer is to show that the plaintiffs had exchanged their checks with S. Gr. & W. Lansing, for the checks of Pratt & Lansing, the defendants, procured by S. Gr. & W. Lansing, at the request of the plaintiffs, and for which checks of the defendants, S. Gr. & W. Lansing had given their own checks to the defendants, and that all this was done on a verbal agreement between S. Gr. & W. Lansing and the defendants, of which the plaintiffs had knowledge that the defendants’ checks were not to be paid, unless S. Gr. & W. Lansing’s checks were paid.
The defendants’ counsel, in connection with this, offered to show that this system of exchanging checks, was a contrivance between the plaintiffs and S. Gr. & W. Lansing for keeping up a fictitious bank credit, and that at the various times the respective checks were drawn, neither party had any funds in the bank.
The understanding between defendants and S. Gr. & W. Lansing was, that their checks were to be deposited in the bank, one against the other, but the defendants were not to be paid, unless those of the Lansings were paid.
The Judge at the trial excluded this evidence, in so far as it went to eondradict the legal effect of the checks, but allowed it for any other purpose. The defendants then declined going into the evidence, but for the purposes of this decision the facts offered to be shown, may be considered as having been all excluded.
Was the Judge right in excluding this evidence?
The defendants contend — first, that their checks never had a legal inception, as binding contracts in the hands of the payees, S. Gr. & W. Lansing, because the event on which they were to be binding, to wit, the payment of the checks of S. Gr. & W. Lansing never took place, and which defence, if good, is equally so *334 against tbe plaintiffs, as against tbe payees; tbe former baying •taken them with notice, and that tbe evidence offered does not therefore infringe upon tbe rule excluding parol evidence to contradict tbe terms of a contract, which rule is applicable only to subsisting contracts — and, secondly, that tbe evidence offered would have shown a total failure of tbe consideration of tbe defendants’ checks.
1. A check creates a contract on tbe. part of tbe drawer, that tbe bank shall pay tbe money expressed on its face. (Cringle v. Armstrong, 3 J. Cas. 5.) As contracts they are subject to tbe same rules of evidence as other written obligations.
It is said, that, admitting this rule to be true, tbe defendants’ checks never bad an inception, tbe event upon which they were to become payable, never having happened.
Tbe difficulty in this position is, that tbe checks were debvered —they were passed to the plaintiffs, and were beyond tbe defendants’ control — and though tbe defendants may have a defence to them on other grounds, they cannot say that they are not evidences of debt. Prima fade they are good contracts.
Tbe plaintiffs may fail to recover, on tbe ground that tbe contracts in their bands are not available, but not on tbe ground that they are nullities.
Tbe first question then is, can evidence be admitted to contradict tbe face of tbe instrument, when offered against a party who received it with full knowledge of tbe fact offered to be proved ?
If S. Gr. & "W. Lansing bad sued upon tbe checks, could tbe defendants have shown what is offered to be shown here — that they were payable, not absolutely as expressed on their face, but conditionally upon an uncertain event ?
In Campbell v. Hodgson, (1 Glow's Rep. 74,) which was an action by payee against tbe acceptor of a bill of exchange, evidence bad been admitted of a verbal understanding between tbe parties, that payment was not to be demanded, if tbe plaintiff could procure tbe debt for which tbe acceptance was given, out of another iund. Tbe court (Dallas, J.) said that this evidence bad been received only on tbe ground that something like payment might have been proved. In respect to tbe evidence as affecting tbe contract, be says, “There is no condition apparent on tbe face of tbe bill, and no rule of law is better established than that a party shall *335 not be permitted to add a yerbal or oral condition in order to control the legal effect of a written instrument. In an action on a bill or note, the defendant is not allowed to give evidence that the bill or note should be renewed, or that payment should not be demanded when the instrument becomes due, for there would be no use in reducing an agreement into writing, if it is thus to be varied by a parol understanding.”
In this case it is true there was a consideration for the acceptance, but that had no effect upon the question of the application of the rule of evidence, as affecting the legal import of the paper treated as a written contract.
The suit was between the original parties, and though the admission of the evidence on the trial was excused by the court, on the ground that it might show payment, the case is a clear authority against its admission, even between the original parties, when offered to show that the contract was different from that expressed.
The rule excluding the evidence, rests upon other and different grounds than the actual equities between the parties; it is a rule of policy, and is enforced often against the justice of the case in the particular instance.
An agreement made cotemporaneously with the bill to renew it, cannot be shown, even as between the parties to the transaction. (Hoare v. Graham, 3 Camp. Rep. 57.)
Such an attempt was made by the defendant, in the case cited, who offered to show that it was expressly agreed between himself and the plaintiff that the note in suit, (made by the defendant,) and which, on its face, was payable on demand, was not in fact, to be paid, until the plaintiff had done certain things. The evidence was admitted, and on a motion for a new trial, the court held, (Tenterden, Ch. J.,) that upon principle, as well as authority, the evidence was inadmissible.
So in Eaves v. Henderson, (17 Wend. Rep. 190,) the defendant, one of the makers of the note sued upon, had given evidence on the trial that an agreement had been made cotemporaneously with the giving of the note, with the plaintiff, the payee, that the latter would allow that a certain account which the defendant held against him should go in payment of the note — -but the *336 court held it to have been improperly admitted as a contradiction of the note.
So in Thompson v. Ketchum, (8 J. R. 189,) the court held that evidence of a parol agreement that the note (not expressing time of payment, and therefore payable immediately) was not to be paid until a future event, was inadmissible.
All these were cases between the original parties. Indeed the general rule cannot be denied. (Chitty on Bills, 162.)
The offer here is to show that the checks were not to be paid, except on the occurrence of an uncertain event. If such evidence were admissible, it would totally avoid the checks as contracts, and render them nullities. (3 Kent, 7th ed. 89.)
TT- The question then remains, whether the evidence is admissible to show a failure of consideration as respects the defendants, for any other purpose than to contradict the checks themselves.
The case must be treated as though the plaintiffs stood in the shoes of the Lansings, since they had full knowledge of the entire agreement between them and the defendants.
It was a part of this agreement that the checks should be mutually deposited in bank, to offset each other, yet the Lansings took defendants’ checks, and without depositing them in bank transferred them to plaintiffs.
This, then, was a perversion of the cheeks from the uses for which they were given, and the plaintiffs received them with knowledge of the misappropriation.
But whether this be so or not, the checks are now mutually in the hands of the parties who originally exchanged them, that is, defendants hold the checks of Lansings, and the Lansings (or plaintiffs, who stand in their place,) hold the checks of defendants. The checks are mutually dishonored.
If Lansings had not transferred the defendants’ checks to plaintiffs, but presented them at their bank for deposit, and defendants had done the same with Lansings’ checks, and the banks had refused to receive either on deposit, the entire consideration would have failed on both sides, as neither would have received the credit which the checks were intended to create.
Whether they were refused deposit or not, does not appear. If they were deposited, they were returned dishonored to the bank where deposited, and the credit of course cancelled. *337 It follows, that the purpose for which the checks were made and exchanged haying been thus defeated, neither party has now a right to enforce them against the other, and consequently that there has been an entire failure .of the original consideration upon which they were respectively founded.
We are of opinion that the evidence which was offered and rejected upon the trial to establish these facts, as it would have shown both a misapplication of the checks in suit and a failure of the consideration upon which they were given, ought to have been received. There must, therefore, be a new trial, with costs to abide the event.